**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **SIDNEY I. and RUTH L. PILOT,** | ) | |
| **as co-trustees on behalf of** | ) | |
| **THE SIDNEY I. AND RUTH L.** | ) | |
| **PILOT TRUST,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No.  09 C 6879** |
| | ) | |
| **FOCUSED RETAIL PROPERTY I,** | ) | **Magistrate Judge Morton Denlow** |
| **LLC,  et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

This case comes before the Court on Plaintiffs' motion for return of privileged documents and Defendants' joint motion to determine waiver of claimed privilege.  Both sides bring their respective motions pursuant to Federal Rule of Civil Procedure 26(b)(5)(B).  The motions arise from Plaintiffs' production of privileged communications in their Rule 26(a)(1)(A)(ii) initial disclosures and Defendants' use of the material in Plaintiff Sidney Pilot's deposition.  Plaintiffs claim the documents remain privileged despite their production, while Defendants assert Plaintiffs waived the privilege by disclosing the documents and failing to object to their use at the deposition.  For the following reasons, the Court grants in part and denies in part Defendants' joint motion and denies Plaintiffs' motion.

# I. BACKGROUND FACTS

These motions arise from a discovery dispute in a case involving Plaintiffs' investment in certain of Defendants' shopping centers. Plaintiffs claim Defendants fraudulently induced them to invest in shopping centers in Ohio, Georgia, and North Carolina and that the Defendants failed to make certain payments to Plaintiffs' Trust. Plaintiffs are represented by attorneys in California ("California counsel") and Chicago ("Chicago counsel"). In the course of discovery, Plaintiffs' Chicago counsel produced to Defendants a number of privileged communications between Plaintiff Sidney Pilot ("Pilot") and California counsel. At Pilot's deposition, defense counsel introduced two of these documents. Plaintiffs' counsel did not object to Defendants' use of the privileged correspondence at the deposition, but Chicago counsel later sent Defendants a letter demanding that Defendants return them and the other privileged correspondence. The present motions present the issue of whether and to what extent Plaintiffs waived the attorney-client privilege.

## A.    Plaintiffs Disclose Privileged Communications in their Rule 26 Disclosures.

Plaintiffs disclosed the documents in question to Defendants as part of their initial disclosures produced pursuant to Federal Rule of Civil Procedure 26(a)(1)(A)(ii). On April 22, 2010, Plaintiffs produced 588 pages of documents in their initial disclosures. Among those documents were eight letters totaling eleven pages between Pilot and California counsel. Plaintiffs' Chicago counsel sent a transmittal letter along with the initial disclosure, but did not include a privilege log. Plaintiffs' counsel did not mark the

disclosed documents for identification with Bates stamping or page numbers. Between the initial disclosure and Pilot's deposition, Plaintiffs' counsel did not request the return of any documents produced to Defendants' counsel.

Plaintiffs' Chicago counsel states that he did not mean to include the privileged documents in the Rule 26 production. He had received documents related to the case from California counsel. By February 2010, he reviewed the documents, segregating privileged correspondence from the remainder of the documents. He forgot, however, that his file also contained a duplicate set of these documents, with the privileged and unprivileged material still intermixed. In April 2010, Chicago counsel instructed his assistant to copy the documents related to this case and send them to opposing counsel. Counsel did not inspect the documents that his assistant assembled for production and does not mention giving his assistant any instructions related to screening privileged documents. Apparently, his assistant copied the set of documents that contained the privileged material, rather than the set from which privileged correspondence had been segregated.

**B.      Defendants Use the Privileged Materials in Plaintiff Sidney Pilot's Deposition.**

On January 6 and 7, 2011, Defendants deposed Pilot in California. During the deposition, Defendants' counsel introduced two of the privileged documents that had been disclosed. The first was a one-page fax cover sheet on California counsel's letterhead with a message from California counsel to Pilot, dated December 19, 2006. The fax as it was used at the deposition had attached a letter from Pilot to a third party,

but Plaintiffs assert that the attachment was not included with the fax in its original form, and they do not claim a privilege as to it.[1]  At the deposition, defense counsel presented Pilot with the cover sheet and attachment as a single exhibit but questioned Pilot only about the attachment.  The second privileged document used at the deposition was a two-page letter from California counsel to Pilot dated June 5, 2008.  Defense counsel read this letter into the record and questioned Pilot about it.  Defense counsel also entered both documents as exhibits, tendering them to the court reporter at the conclusion of the deposition.  Plaintiffs' counsel did not object to any of this during the deposition, even though the same lawyer who had authored both privileged documents was defending the deposition.  Pilot, himself an attorney, also did not object, though the parties disagree whether a stroke has affected his mental capacity.

On Monday, January 10, 2011, the next business day, Plaintiffs' Chicago counsel sent Defendants a letter demanding the return of the privileged correspondence used at Pilot's deposition.  Plaintiffs claimed the letters were protected by the attorney-client privilege and demanded Defendants return the original letters and any copies pursuant to Federal Rule of Civil Procedure 26(b)(5)(B).  Plaintiffs also identified the remaining privileged documents, asserted the attorney-client privilege, and demanded their return.  Defendants refused, arguing that Plaintiffs waived the attorney-client privilege by producing the documents and not objecting to their use at the deposition.

---

[1] Defendants request a ruling that "any communications" with this third party are not privileged, but such a broad issue is not before the Court.  Suffice it to say that Plaintiffs do not claim privilege as to the single communication in question.

The parties agree that the attorney-client communications at issue were privileged. Both sides filed motions to determine whether the privilege was waived. Oral argument was held on March 24, 2011.

## II. DISCUSSION

### A. Federal Law Governs the Waiver of Attorney-Client Privilege.

Federal Rule of Evidence 502 addresses waiver of attorney-client privilege, and Rule 502(b) sets forth a test for whether inadvertent disclosures "made in a Federal proceeding" operate as a waiver of privilege. But Plaintiffs argue that state law should govern the issue of waiver, because this is a diversity case. They rely on Rule 501, which directs courts to apply state privilege law where state law provides the rule of decision. Rule 502, however, operates as an exception to Rule 501's choice of state privilege law for diversity cases. Rule 502(f) says as much: "[N]otwithstanding Rule 501, this rule applies even if State law provides the rule of decision." In other words, even though state law governs the attachment of attorney-client privilege in this diversity case, Rule 502 governs waiver of the privilege. *See Coburn Grp., LLC v. Whitecap Advisors LLC*, 640 F. Supp. 2d 1032, 1042–43 (N.D. Ill. 2009) (applying Rule 502 in a diversity case).

Plaintiffs also argue that Rule 502 is unconstitutional, but their argument lacks merit. Rule 502(f) applies the rule's waiver standards even to state proceedings, and Plaintiffs argue that this portion of the rule exceeds Congress's Commerce Clause power. As the rule applies to this action, however, it governs a federal proceeding and thus rests on Congress's power to regulate the federal courts. *See In re Air Crash Disaster Near*

*Chicago, Ill.*, 701 F.2d 1189, 1193 (7th Cir. 1983) (holding that the Federal Rules of Evidence apply to diversity cases).  This case, therefore, does not present a Commerce Clause issue.

**B.      Plaintiffs Have Waived the Attorney-Client Privilege Regarding the Disputed Materials.**

When deciding whether a disclosure has waived the attorney-client privilege, a court must first determine whether the disclosed documents are privileged and then apply the elements of Rule 502(b) to determine whether the disclosure waives the privilege. *Heriot v. Byrne*, 257 F.R.D. 645, 655 (N.D. Ill. 2009).  Since the parties here agree that the disclosed documents were privileged, the Court begins with the Rule 502(b) analysis. Under Rule 502(b), a disclosure of information covered by the attorney-client privilege does not operate as a waiver of that privilege if (1) the disclosure was inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent the disclosure; and (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).  The party asserting privilege has the burden of proving he has satisfied the requirements of Rule 502(b).  *See Heriot*, 257 F.R.D. at 658.

Before Congress enacted Rule 502 in 2008, courts applied a list of factors to determine whether an inadvertent disclosure waived privilege.   Rule 502 does not explicitly codify these factors but "is flexible enough to accommodate" them, as they represent "a set of non-determinative guidelines that vary from case to case."  Fed. R. Evid. 502(b) advisory committee's note.  As a result, older cases applying these factors

remain relevant to the Rule 502(b) inquiry. The factors include the reasonableness of precautions taken; the time taken to rectify the error; the scope of discovery; the extent of disclosure; and the overriding issue of fairness. *Id.*; *see also Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 387–88 (7th Cir. 2008) (listing the factors).

For the reasons explained below, Plaintiffs have established the first element but have failed to establish the second or third elements of the Rule 502(b) test. Accordingly, they have waived their privilege regarding the eight documents in question.

### 1. The Disclosure Was Inadvertent.

To show they did not waive the attorney-client privilege, Plaintiffs must first prove the disclosure was inadvertent. Fed. R. Evid. 502(b)(1). Rule 502 does not define "inadvertent disclosure," and the courts in this district have offered two different tests for determining whether a disclosure is inadvertent. One method looks to factors developed in pre-Rule 502 case law, such as "the total number of documents reviewed, the procedures used to review the documents before they were produced, and the actions of producing party after discovering that the documents had been produced." *Heriot*, 257 F.R.D. at 658–59 (citation omitted). The other method concludes that Rule 502 simplified this first step of the analysis, and "essentially ask[s] whether the party intended a privileged or work-product protected document to be produced or whether the production was a mistake." *Coburn Grp.*, 640 F. Supp. 2d at 1038. This Court agrees with the simpler method, because Rule 502(b)(1) poses a straightforward question of

intent.  Meanwhile, the multi-factor approach is redundant of the later analysis.  In fact, two of *Heriot*'s "inadvertence" factors simply restate the inquiries spelled out in Rule 502(b)(2) and (3).  Under either approach, however, the disclosure here was inadvertent.

Under the simple intent-based approach, Chicago counsel's affidavit establishes that the disclosure was a mistake.  Chicago counsel states that he initially separated the privileged documents from all other documents, and did not intend to disclose the privileged material.

The multi-factor approach likewise suggests inadvertence. First, the Court considers the size of the disclosure viewed against the overall production.  Plaintiffs' Chicago counsel reviewed and produced 588 pages of documents, of which eleven pages—or about two percent of the total production—were privileged.  A production of 588 documents is relatively small.  *See Heriot*, 257 F.R.D. at 659 (noting that document production of 6,952 pages is "neither apologetically large nor astonishingly small"); *Kmart Corp. v. Footstar, Inc.*, No. 09 C 3607, 2010 WL 4512337, at *4 (N.D. Ill. Nov. 2, 2010) (noting that the screening of 300 pages of potentially privileged documents is not too arduous).  That said, the ratio of privileged pages to the total production was relatively small, at two percent.  *See Kmart*, 2010 WL 4512337, at *4 (disclosure where privileged documents are less than three percent of the total production is not a "significant mistake"); *Wunderlich-Malec Sys., Inc. v. Eisenmann Corp.,* No. 05 C 4343, 2006 WL 3370700, at *4 (N.D. Ill. Nov. 17, 2006) (disclosure of 120 privileged documents consisting of one percent of the total production neither proves nor disproves

inadvertence). A ratio this small does not suggest intentional disclosure.

As for the other factors, Plaintiffs' actions before production and after discovering the disclosure support a finding that the disclosure was inadvertent. Upon receiving the case materials from California counsel, Plaintiffs' Chicago counsel initially separated the privileged material from the other 577 pages of documents in preparation for initial disclosures. Later, after learning that Defendants used privileged documents in Pilot's deposition, Chicago counsel sent a letter the next business day demanding a return of the privileged documents. While these actions may not establish either reasonable steps to prevent disclosure or reasonable steps to rectify the error, they do suggest that Plaintiffs' disclosure was inadvertent. Thus, under either method, the Court finds that the disclosure was inadvertent.

Because the disclosure was inadvertent, the Court need not consider whether any waiver should extend to undisclosed materials. Pursuant to Rule 502(a)(1), waiver extends to undisclosed communications only if it was intentional. The Court denies Defendants' request that any waiver extend to the subject matter of Plaintiffs' Rule 26 production.

### 2. Plaintiffs Did Not Take Reasonable Steps to Prevent the Disclosure.

After establishing the disclosure was inadvertent, Plaintiffs must next show they took reasonable steps to prevent the disclosure. Fed. R. Evid. 502(b)(2). The most logical place to start is the procedure Plaintiffs followed to prevent disclosure of the privileged material. Plaintiffs argue that Chicago counsel's initial review for privileged

documents was enough to prevent waiver. The Court disagrees. In *Kmart*, for instance, the disclosing party's attorney personally reviewed documents in preparation for production, specifically looking for "attorney-client or work-product privilege issues." 2010 WL 4512337, at *4. Even so, the court found insufficient steps to prevent disclosure, stressing that the disclosing party did not mention any software, records management system, or other facts to demonstrate that a "sufficient screening process was used." *Id.*

Here, Plaintiffs failed to demonstrate any screening process at the time of production. Plaintiffs' Chicago counsel admits in his affidavit that he did not review the April production before sending the documents to Defendants. Nor does he mention instructing his assistant to screen for privileged documents. Counsel protests that he had previously reviewed the file for privileged documents and merely forgot that a duplicate set of documents existed. But this argument only illustrates that he should have either used an organized screening procedure or reviewed the actual production, lest such a mistake occur. Counsel's review of the documents he originally received did not make up for his total failure to review the production itself.

The Court also weighs the scope of discovery and the extent of disclosure in concluding Plaintiffs did not take reasonable steps to prevent the disclosure. Plaintiffs disclosed the privileged material as part of their Rule 26 initial disclosures. Rule 26 productions are narrow in scope and only apply to documents a party "may use to support its position." Fed. R. Civ. P. 26(a) advisory committee's note (2000 Amendment).

Inadvertent disclosures of privileged documents occur more commonly when responding to broad requests to produce, which often cover thousands of documents. *See Heriot*, 257 F.R.D. at 659 (collecting cases where productions ranged from 7,864 pages to over 25,000 documents). The production here was only 588 pages, and this small size weighs in favor of waiver. Likewise, the number of privileged documents disclosed suggests waiver, especially since they were obviously privileged. Although the privileged documents made up less than two percent of the production's pages, producing eight privileged letters, several on firm letterhead, is significant in such a small total production.

Lastly, time constraints on the discovery did not prevent a waiver. Plaintiffs' Chicago counsel emphasizes his busy schedule around the time of production and argues that he took reasonable steps to review the production given his other commitments. During April 2010, he tried three cases and was participating in discovery for another case. But the relevant time constraints are those relating to this discovery, not an attorney's schedule. *See Kmart*, 2010 WL 4512337, at *4 (finding self-imposed time constraints not persuasive in showing reasonable steps to prevent disclosure). Here, Plaintiffs had two months to review less than 600 pages, more than enough to accomplish the necessary review. Thus, the Court finds that Plaintiffs did not take reasonable steps to avoid disclosing the privileged documents.

### 3. Plaintiffs Did Not Take Reasonable Steps to Rectify Their Error.

With regard to the two documents introduced at Pilot's deposition, Plaintiffs also waived the privilege by failing to take reasonable steps to rectify their error. For this Rule 502(b)(3) inquiry, courts focus on the producing party's response after it realizes that it has disclosed privileged material. *See Coburn Grp.*, 640 F. Supp.2d at 1041. Most importantly here, Plaintiffs' counsel failed to assert a privilege at the deposition. *See Kmart*, 2010 WL 4512337, at *5 (finding waiver where disclosing party failed to put a privilege objection on the record at deposition). Attorneys commonly discover an inadvertent disclosure at a deposition, and objecting to the use of privileged material represents an important step toward preserving the privilege. *See Coburn Grp.*, 640 F. Supp. 2d at 1041 (no waiver where disclosing party "immediately objected" to the use of privileged communications at a deposition, requested the documents back the next day, and followed up with a written request); *Heriot*, 257 F.R.D. at 661–62 (collecting cases where no waiver was found when disclosing party "immediately" or "almost immediately" objected to use of privileged communications at deposition).

Here, Plaintiffs waived the privilege when, despite ample opportunity, they failed to raise a privilege objection at Pilot's deposition. Defense counsel read privileged material into the record; questioned Pilot about it; and tendered the privileged documents to the court reporter. This all occurred without objection from Plaintiffs' counsel, even though both documents were obviously privileged. Both appeared on California counsel's letterhead, and they represented communications between the deponent and one

of the lawyers defending the deposition.  The Court can scarcely imagine stronger facts to support a waiver.  Under these circumstances, a demand letter could not substitute for objecting at the deposition, even if Plaintiffs' counsel sent it the next business day.

Regarding the privileged documents disclosed to Defendants but not used at Pilot's deposition, a closer calls exists as to whether Plaintiffs took reasonable steps to rectify their error.  But the Court has already held that Plaintiffs waived their privilege to these documents under Rule 502(b)(2), and therefore has no need to address them under Rule 502(b)(3).

### III.  CONCLUSION

**Plaintiffs have waived attorney-client privilege regarding the eight documents at issue.  For the reasons set forth in this opinion, the Court grants in part and denies in part Defendants' joint motion to determine waiver of privilege and denies Plaintiffs' motion for return of privileged documents.**

**SO ORDERED THIS 30th DAY OF MARCH, 2011.**

_____
**MORTON DENLOW**
**UNITED STATES MAGISTRATE JUDGE**

**Copies sent to:**

Merle L. Royce , II
Law Offices of Merle L. Royce
70 West Washington
Suite 2100
Chicago, IL 60602

Jennifer S. Elkayam
Maryann R. Marzano
Blecher & Collins, P.C.
515 S. Figueroa Street
Suite 1750
Los Angeles, CA 90071

Counsel for Plaintiff

James E. Dahl
Edward Scott Livingston
Dahl & Bonadies
225 W. Washington Street
Suite 1640
Chicago, IL 60606

Dean J. Polales
Samera S. Ludwig
Ungaretti & Harris LLP
3500 Three First National Plaza
Chicago, IL 60602

Counsel for Defendants